UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRENT BELLAMY, #588480,

                Petitioner,

                                       CASE NO. 2:08-CV-14537
v.                                  HONORABLE ANNA DIGGS TAYLOR

THOMAS K. BELL,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

### I.    Introduction

      Michigan prisoner Trent Bellamy ("Petitioner") has filed a pro se petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of 10 counts of armed

robbery, Mich. Comp. Laws § 750.529; one count of assault with intent to rob while armed,

Mich. Comp. Laws § 750.89; one count of assault with intent to commit murder, Mich. Comp.

Laws § 750.83; one count of second-degree criminal sexual conduct, Mich. Comp. Laws §

750.520c; and eight counts of possession of a firearm during the commission of a felony, Mich.

Comp. Laws § 750.227b. He was sentenced to concurrent terms of 17 years six months to 80

years imprisonment for five of the armed robbery convictions, 18 years nine months to 80 years

imprisonment for the other five armed robbery convictions, 23 years nine months to 80 years

imprisonment on each of the two assault convictions, 8 years 3 months to 15 years imprisonment

on the criminal sexual conduct conviction, and two years imprisonment on each of the felony

firearm convictions, to be served concurrently to each other but consecutively to the other

sentences.  In his pleadings, Petitioner asserts that he was denied the effective assistance of counsel at trial.  For the reasons set forth herein, the Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability.

## II.     Facts and Procedural History

Petitioner's convictions arise from nine armed robberies which occurred in Macomb County, Michigan between January 30, 2005 and April 7, 2005.  The first robbery occurred on January 30, 2005, at the Blue Dog Party Place in Chesterfield Township.  The two employees working at the time testified that an African-American man wearing a white painter's mask and dark clothing robbed the store at gunpoint and forced them to count to 200 in the backroom. Petitioner confessed to this crime in detail.  He was convicted of two counts of armed robbery and one count of felony firearm for this incident.

The second robbery occurred on February 10, 2005, at the Card 23 Party Mart in Macomb.  The employee testified that a man wearing a white painter's mask robbed the store at gunpoint and forced him to face the ground and count to 200.  Petitioner confessed to this crime, providing specific details and noting that the painter's mask was his "trademark."  He was convicted of one count of armed robbery and one count of felony firearm for this incident.

The third robbery occurred on February 15, 2005, at Frank's Liquor in Sterling Heights. The owner testified that an African-American man wearing a white painter's mask and dark clothing robbed the store while indicating that he had a gun in his pocket.  The man forced the owner and her two children into the backroom and instructed them to count to 200.  Petitioner confessed to this crime in detail.  He was convicted of one count of armed robbery for this incident.

The fourth robbery occurred on February 28, 2005, at the Finesse Liquor Store in Warren. An employee testified that an African-American man wearing a white mask and dark clothing robbed the store at gunpoint. Petitioner confessed to this crime in specific detail. Petitioner was convicted of one count of armed robbery and one count of felony firearm for this incident.

The fifth robbery occurred on March 1, 2005, at the Passport Pizza in Chesterfield Township. Employees testified that an African-American man wearing a white dust mask and a dark blue sweatshirt robbed the store at gunpoint and forced them to count to 500 in the bathroom. Petitioner confessed to this crime in detail. He was convicted of two counts of armed robbery and one count of felony firearm for this incident.

The sixth robbery occurred on March 2, 2005, at a Subway in Sterling Heights. An employee identified Petitioner as the perpetrator. She testified that Petitioner wore a white dust mask and dark clothing. She further testified that Petitioner forced her into the backroom at gunpoint, fondled her sexually, and told her to not to move while he left the store. Petitioner confessed to this crime. He was convicted of one count of armed robbery, one count of second-degree criminal sexual conduct, and two counts of felony firearm for this incident.

The seventh robbery also occurred on March 2, 2005, at the Big Valley Foods in Sterling Heights. The store owner identified Petitioner at trial. He testified that Petitioner wore a light blue painter's mask and a blue sweatshirt. The owner further testified that Petitioner attempted to rob the store, but the owner fled the store and Petitioner fired gunshots at him. Petitioner confessed to this crime. He was convicted of one count of assault with intent to rob while armed, one count of assault with intent to murder, and two counts of felony firearm for this

incident.

The eighth robbery occurred on April 7, 2005, at a Tubby's Submarine Shop in Warren. Two employees testified that an African-American man wearing a dust mask or surgical mask informed them that he was armed and robbed the store. One of the employees identified Petitioner in court. Petitioner confessed to the crime. Petitioner was convicted of one count of armed robbery for this incident.

The ninth robbery also occurred on April 7, 2005, at the Aloha Tanning in Clinton Township. Two employees testified that a man wearing a dust mask implied that he was armed and robbed the store. One of the employees provided a description of the perpetrator's car to the police. Petitioner was arrested approximately three hours later driving a car matching the employee's description. Police found a dark blue sweatshirt, an envelope from Tubby's Submarine Shop, and two dust masks in Petitioner's car. Petitioner confessed to this crime. He was convicted of one count of armed robbery for this incident.

On the morning of April 8, 2005, Petitioner was interrogated by several police officers. Detective Furno and Sergeant Dunn from the Clinton Township Police Department, with Detective Dowell from the Chesterfield Township Police Department, questioned Petitioner during an initial interview. Petitioner denied committing the crimes at first, but confessed to the robberies in detail after a few hours. The interrogation and confession were tape-recorded, but the audio was low quality and inaudible. Later that same day, Petitioner provided a videotaped confession in the presence of different officers.

Before trial, defense counsel did not oppose the prosecutor's motion to join all 21 charges of the nine robberies into one trial. Defense counsel, however, did move to suppress

Petitioner's initial confession.  The trial court conducted a *Walker* hearing[1] to resolve the motion.

At that hearing, Detectives Furno and Dowell testified that Petitioner's confession was voluntary

and not the result of coercion.  Defense counsel attempted to establish that the detectives had

coerced Petitioner into confessing through threats, intimidation, and the denial of food and water.

The recording of the first interrogation was not played for the trial court, as defense counsel had

not yet listened to the statements on the recording.  The detectives' specific statements were not

admitted at the hearing.  Petitioner testified that the detectives forced him to give the confession.

At the conclusion of the hearing, the trial court held that the confession was voluntary and

admissible.  Petitioner's statements to the police were subsequently admitted at trial.

    During trial, defense counsel attempted to call Petitioner's girlfriend, Alicia Buzdygan, as

an alibi witness.  Shortly after Buzdygan began testifying, the prosecutor objected once she

realized Buzdygan's purpose.  The trial court upheld the objection and prohibited Buzdygan

from testifying because defense counsel had failed to provide the proper statutory alibi notice.

    On the day the trial concluded, defense counsel discovered that Petitioner had filed a

grievance against him.  Defense counsel revealed this information to the court and Petitioner

stated that he intended to hire new counsel for sentencing.  Petitioner apparently made no

attempt to do so, however, and the same attorney represented him at sentencing.  The grievance

was subsequently dismissed.

    Following his convictions and sentencing, Petitioner moved for a remand in the Michigan

Court of Appeals requesting a *Ginther* hearing[2] to address allegations of ineffective assistance of

---

[1]*People v. Walker*, 374 Mich. 331 (1965).

[2]*People v. Ginther*, 390 Mich. 436 (1973).

trial counsel. The motion was granted and the trial court held a hearing. At that hearing, defense counsel testified that he had multiple pre-trial discussions with Petitioner about calling Alicia Buzdygan as an alibi witness. While Petitioner provided some information about the alibi, he did not provide defense counsel with any details at that time. In fact, defense counsel did not receive the necessary information (such as the date of the alibi) from Petitioner or Buzdygan until the day he attempted to call her as a witness.

Defense counsel also testified that he did not oppose the prosecutor's motion to consolidate the charges because he intended to highlight the factual differences between the armed robberies to the jury. Defense counsel also believed that evidence of all nine robberies would have been admitted against Petitioner under Michigan Rule of Evidence 404(b), such that multiple trials would have merely increased Petitioner's chances of being convicted.

Defense counsel further testified that he did not withdraw as Petitioner's attorney during trial or before sentencing because he did not believe a conflict of interest existed. Although counsel was aware of Petitioner's grievance at the conclusion of trial, he believed that his ability to represent Petitioner was not impaired. Defense counsel also stated that he adequately represented Petitioner at sentencing.

Lastly, defense counsel testified that he did not move to admit the audiotape of the first police interrogation at the *Walker* hearing because it was inaudible. After some difficulty, the recording was transcribed by a court reporter during the hearing. The relevant statement by Detective Furno was as follows:

> **Detective Furno**: Let me tell you what buddy, once I call the State today or the Federal government wherever is the distribution that Medicaid check to you, your house is gone. Okay. Your ma, listen, not only are you affecting yourself right now, you're cutting off the aid that is coming to your house because it's against the law

to have a guy charged with a felony receiving federal aid. Okay. Your money is gone. You need to keep yourself out of the can as long as you can here because right now I could probably keep you locked up for the next 20 years with all the Macomb County cases, maybe more. Okay. You better start thinking about your ma and you better start thinking about it when I go over her house today with a search warrant. I throw her out and I let her make a phone call whoever is going to pick her up and take care of her and I evict her from her house and me and four other police departments from Macomb County tear that house to living shreds because when we're done with it, it's not going to be in livable condition.

Defense counsel stated that he would have introduced Detective Furno's statements at the *Walker* hearing or during cross-examination of Detective Furno at trial if the recording had been audible. Defense counsel opined that Detective Furno's statements undermined the prosecution's claim that Petitioner's confession was voluntary. Following the hearing, the trial court concluded that trial counsel was not ineffective.

Petitioner filed an appeal of right with the Michigan Court of Appeals, presenting the following claims:

I. Did defendant-appellant receive the effective assistance of counsel at trial due to counsel's failure to adequately investigate potential defenses or evidentiary matters, failure to adequately impeach a key witness, failure to notify the prosecution of an alibi witness, failure to object to the prosecution's motion to consolidate charges, and failure to move to withdraw as counsel when a breakdown of the attorney-client relationship occurred?

II. Did the trial court err by granting the prosecution's motion to consolidate the cases prior to trial, which caused substantial prejudice to the defendant?

III. Did the trial court err by refusing to allow the testimony of an alibi witness despite the fact that defense counsel did not comply with the statutory notice requirements where the defendant was substantially prejudiced by the absence of this evidence?

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Bellamy*, No. 268462 (Mich. Ct. App. Nov. 29, 2007) (unpublished). The Michigan Supreme Court

denied leave to appeal in a standard order. *People v. Bellamy*, 480 Mich. 1188 (2008).

Petitioner thereafter filed his federal habeas petition asserting the following claims of ineffective assistance of trial counsel:

I. Failure to adequately investigate potential defenses or evidentiary matters. Failure to impeach a key witness.

II. Failure to adequately investigate and present the alibi defense at trial.

III. Failure to object to the prosecution's motion for joinder of the charges.

IV. Failure to move to withdraw during trial.

Respondent has filed an answer to the habeas petition contending that it should be denied for lack of merit.

## III. Standard of Review

Petitioner's claims are reviewed against the standard imposed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceedings.

An "unreasonable application" of federal law occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Possible error by the state court is not sufficient to justify

granting the habeas petition; the state court's application of federal law "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). In other words, a federal court may issue the writ only if the state court incorrectly applied clearly established federal law and the state court's application of federal law was unreasonable. *Williams*, 529 U.S. at 409-11. Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

## IV. Analysis

Petitioner asserts that trial counsel was ineffective for failing to sufficiently investigate his audio-recorded confession and cross-examine Detective Furno, for failing to adequately investigate and present an alibi defense, for failing to object to the joinder of the charges into one trial, and for failing to move to withdraw during trial. Respondent contends that Petitioner's claims lack merit and do not warrant federal habeas relief.

In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed under the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that the errors deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the first prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The

court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions within reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy. *Id.* at 689. Moreover, defense counsel cannot be deemed deficient for failing to make a meritless or otherwise futile objection or motion. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996).

To satisfy the second prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct . . . undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

With this standard in mind, the Court will review each of Petitioner's specific claims of ineffective assistance of trial counsel.

### A.    Audio-Recorded Confession

Petitioner first asserts that trial counsel was ineffective for failure to investigate his initial audio-recorded confession and impeach Detective Furno about his conduct during the interview.[3]

---

[3]The Court notes that Petitioner does not raise a distinct claim that he is entitled to habeas relief because his initial confession was involuntary. The Court shall therefore limit its discussion to defense counsel's conduct in investigating the audio-recording and questioning Detective Furno. The Court notes, however, that coercion is but one factor in determining voluntariness. *See, e.g., Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (other factors include length, location, continuity of interrogation, suspect's maturity, education, physical and mental condition, and whether the suspect was advised of his rights).

The Michigan Court of Appeals denied relief on this claim, stating as follows:

> Defendant contends that defense counsel was ineffective for failing to thoroughly investigate his initial interview with the police and to impeach Detective William Furno with evidence that he threatened defendant during the interview. Defendant argues that had defense counsel listened to the audio recording of his police interview, counsel would have heard Detective Furno threaten to cut off defendant's Medicaid payments, throw his mother out of her home, and "tear that house to living shreds" if he did not cooperate. Defense counsel testified at a *Ginther* hearing that he attempted to listen to the recording, but that it was of such poor quality that he was unable to hear anything on the audiotape. The prosecutor concedes that defense counsel should have made efforts to obtain a clearer recording. Nonetheless, we find that defendant cannot show prejudice resulting from counsel's failure to impeach Detective Furno considering the overwhelming evidence presented at trial establishing defendant's identity as the perpetrator.

> During each of the incidents giving rise to the charges against defendant, the perpetrator entered the business, announced the robbery, and demanded money, oftentimes asking that the money be placed in a bag. The perpetrator frequently required persons present to enter a room near the back of the establishment, lie down on the floor, and count to a specified number before coming out. Additionally, he often asked if there was a safe on the premises. Although most of the victims were unable to identify the perpetrator after the incidents, three persons identified defendant as the perpetrator at trial. In addition, the witnesses consistently described the perpetrator as a tall African-American male with a slim build, soft spoken, and wearing either a dark hooded sweatshirt or a denim jacket, gloves, a surgical or dust mask, blue jeans or navy blue work pants, and either tennis shoes or work boots.

> At the time of his arrest, shortly after the robberies at Tubby's Submarine Shop and Aloha Tanning Salon, defendant was wearing a denim jacket and blue jeans. Defendant's vehicle matched the description given from witnesses at Aloha Tanning Salon and police officers found several items in the vehicle, including two dust masks, a pair of gloves, a black knit hat, a large amount of money, a pair of tennis shoes, a pair of boots, and the yellow envelope the perpetrator took from Tubby's Submarine Shop. Further, when defendant confessed to the robberies, he claimed that the dust mask was his trademark and provided details of the incidents that he would not have otherwise known. Considering the overwhelming evidence against defendant, it is not reasonably probable that defense counsel's failure to listen to the audiotape of defendant's interview and impeach Detective Furno affected the outcome of the case.

*Bellamy*, No. 268462 at *2-3 [citations omitted].

This ruling is neither contrary to *Strickland* nor an unreasonable application of federal law

or the facts.  Even assuming that trial counsel was deficient for failing to more fully investigate and challenge the audio-recorded confession to the jury, Petitioner's claim cannot succeed because he cannot demonstrate the prejudice required under *Strickland*.  In the confession, Petitioner related several specific facts the robberies.  For example, when confessing to the robbery of the Aloha Tanning Salon, Petitioner stated that there were two girls working at the salon at the time; that he wore a black hat and a dust mask; that he drove west on Cass and north on Romeo Plank; and that he was followed by a white GMC Yukon.  These specific details were corroborated by witnesses and were not released to the general public.  Petitioner's knowledge of these details is heavily incriminating evidence, as only a person actually at the scene of the crime could have related this information.  *See McCray v. Metrish*, 232 F. App'x 469, 474-75 (6th Cir. 2007) (stating that a "full confession" providing details surrounding the crime is much more probative than a simple statement relating no details of the crime).  Thus, presenting Detective Furno's statements to the jury would have had a minimal impact on the credibility on the confession itself.

Moreover, in light of the overwhelming evidence of Petitioner's guilt, including identifications by three victims, Petitioner cannot show that but for a more thorough investigation of the audio-recording or a more rigorous cross-examination of Detective Furno, the result of the trial would have been different.  Petitioner's guilt was well-established through multiple pieces of physical evidence, multiple in-court identifications, a consistent modus operandi, as well as his own statements.  Petitioner also later confessed to the armed robberies on videotape when Detective Furno was not present.  Given such circumstances, Petitioner cannot establish that he was prejudiced by counsel's conduct in this regard.  Habeas relief is not warranted on this claim.

### B.     Alibi Witness

Petitioner next asserts that trial counsel was ineffective for failure to present Petitioner's girlfriend, Alicia Buzkygan, as an alibi witness for one of the robberies. Michigan law requires that a criminal defendant who intends to call an alibi witness provide notification to the court and the prosecution at least 10 days before the start of trial. *See* Mich. Comp. Laws § 768.20. Defense counsel in this case did not provide the requisite notice and the trial court refused to allow Petitioner's girlfriend to testify as an alibi witness during the trial.

The Michigan Court of Appeals denied relief on this claim, stating in relevant part:

> Defendant next contends that counsel was ineffective for failing to investigate and present an alibi defense. Defendant maintains that because counsel did not provide him with a complete discovery package until trial began, he was unable to assist in preparing his defense and was unaware until the first day of trial that his girlfriend, Alicia Buzdygan, could testify as an alibi witness regarding the armed robbery at Card 23 Party Mart. We find, however, that the record belies defendant's assertion.
>
> At the *Ginther* hearing, defense counsel testified that he provided some discovery materials to defendant while he was in jail and that they discussed the possibility of Buzdygan testifying as an alibi witness before trial. According to counsel, he did not file a notice of alibi because he did not have a sufficient basis to believe that an alibi defense could be presented successfully. Counsel maintained that although he had several discussions with defendant regarding the prospect of Buzdygan testifying, defendant did not inform him until the day before Buzdygan attempted to testify that he wanted her to do so. Counsel further testified that Buzdygan was not absolutely certain that defendant was with her on the day of the Card 23 robbery until the time of her testimony. Accordingly, we find that counsel's failure to provide defendant with all of the discovery materials before trial had no bearing on whether defendant presented an alibi defense. Thus, counsel was not ineffective for failing to file a notice of alibi and to present such a defense.

*Bellamy*, No. 268462 at *3.

The Michigan Court of Appeals' decision is is neither contrary to clearly established federal law nor an unreasonable application of the law or the facts. Petitioner has not established that trial counsel's conduct was unreasonable or prejudicial. Although there was some discussion

of calling Alicia Buzdygan as an alibi witness prior to trial, Petitioner and/or the witness delayed informing defense counsel of the necessary information until the time of trial. Given this delay, defense counsel did not act unreasonably by failing to file the required alibi notice. *See Cooper v. Warren*, No. 08-CV-10868, 2010 WL 716323, *12 (E.D. Mich. Feb. 18, 2010) (holding that defense counsel was not deficient for failure to timely notify the court of an alibi witness when the defendant provided the necessary information on the first day of trial). Moreover, trial counsel attempted to use Buzdygan as an alibi witness despite the lack of sufficient notice, which shows that counsel acted as an aggressive advocate on Petitioner's behalf.

In addition, Petitioner cannot show a reasonable probability that the outcome of the trial would have been different if defense counsel had presented his girlfriend as an alibi witness for one of the nine similar robberies. As discussed, the evidence presented against Petitioner at trial was overwhelming. Presenting one interested alibi witness for one of the robbery dates could not have overcome the substantial physical, eyewitness, and circumstantial evidence linking Petitioner to the robberies in question. Habeas relief is not warranted on this claim.

### C.      Joinder of Charges

Petitioner next asserts that trial counsel was ineffective for failing to oppose the prosecution's motion for joinder of all the charges in one trial. The Michigan Court of Appeals denied relief on this claim, stating:

> Defendant also argues that counsel was ineffective for failing to object to the prosecutor's motion for joinder of the charges. We find, however, for the reasons discussed *infra,* that the trial court properly granted the prosecutor's motion. Moreover, counsel's decision not to oppose the motion was a matter of trial strategy and we do not substitute our judgment for that of counsel in matters of trial strategy. Counsel testified that after reviewing the police reports and witness statements, his strategy was to highlight the differences in the offenses and establish that the same person could not have committed all of them. Counsel expressed concern that even

if the offenses were tried separately, the prosecutor may have prevailed on an MRE 404(b) motion to admit evidence of the other incidents, and opined that it was preferable for the jury to focus on all of the incidents at a single trial. Based on the record before us, we find that counsel exercised sound trial strategy in determining whether to oppose the prosecutor's motion for joinder. The fact that counsel's strategy ultimately failed does not render his representation ineffective.

*Bellamy*, No. 268462 at *3 [citations omitted].

The Michigan Court of Appeals' ruling is neither contrary to clearly established federal law nor an unreasonable application of the law or the facts. This Court has not found any Supreme Court cases holding that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him. *See Rodriguez v. Jones*, 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009). To be sure, the United States Supreme Court has stated that "consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience." *Ashe v. Swenson*, 397 U.S. 436, 454 (1970) (Brennan, J., concurring). Joinder "has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993). On habeas review of state court convictions, the question is not whether the joinder of charges or the refusal to sever counts for separate trials violated a state procedural rule, but is whether the petitioner was denied due process of law under the Fourteenth Amendment. *See Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (citing *Corbett v. Bordenkircher*, 615 F.2d 722, 724 (6th Cir. 1980)). "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder [constitutes] a constitutional violation only if it results in prejudice so great as to deny a defendant his...right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986); *Davis*, 475 F.3d at 777 (quoting *Lane*). In order to establish such prejudice, a petitioner must provide specific evidence that joinder was prejudicial; "an unproven assertion is not compelling evidence

of actual prejudice." *United States v. Saadey*, 393 F.3d 669, 679 (6th Cir. 2005). Moreover, jurors are "presumed capable of considering each count separately." *United States v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002).

For ineffective assistance of counsel claims arising from defense counsel's lack of objection to the joinder of charges, a habeas court applies the *Strickland* test. *See, e.g., Raver v. Brunsman*, No. 08-3098, 2010 WL 2545489, *4-5 (6th Cir. June 21, 2010) (unpublished). In this case, Petitioner has failed to establish that counsel erred and/or that he was prejudiced by trial counsel's conduct. First, counsel may have reasonably determined that a opposing the joinder of the charges or seeking a severance would have been futile because the charges were sufficiently related. Under Michigan law, severance is required "only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore,* 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003) (citing Mich. Ct. R. 6.120(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting *People v. Etheridge*, 196 Mich. App. 43, 52, 492 N.W.2d 490 (1992)). Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359-60, 524 N.W.2d 682 (1994).

At the time of Petitioner's trial, Michigan Court Rule 6.120 provided:

(A) Permissive Joinder. An information or indictment may charge a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial.

(B) Right of Severance; Unrelated Offenses. On the defendant's motion, the court

must sever unrelated offenses for separate trials. For purposes of this rule, two offenses are related if they are based on

>(1) the same conduct, or

>(2) a series of connected acts or acts constituting part of a single scheme or plan.

>(C) Other Joinder or Severance. On the motion of either party, except as to offenses severed under subrule (B), the court may join or sever offenses on the ground that joinder or severance is appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial. Subject to an objection by either party, the court may sever offenses on its own initiative.

Mich. Ct. R. 6.120 (prior to 2006 amendments).

In this case, the record indicates that the robberies were sufficiently similar and close in time to be part of a single scheme or plan. Trial of the charges involved some of the same witnesses and evidence and was more efficient for the parties and the court. Petitioner has not shown that joinder was improper or that severance was required or would have been granted under state law. He thus cannot establish that counsel was deficient for not opposing the joinder of the charges. Defense counsel cannot be deemed ineffective for failing to make a futile motion. *See McQueen*, 99 F.3d at 1316.

Additionally, trial counsel stated that he believed joinder of the charges could benefit Petitioner because the prosecutor would have only one chance for conviction instead of multiple chances. Trial counsel further explained that his trial strategy was to expose differences between the armed robberies and question how one person could have committed all of them in order to create reasonable doubt at trial. Such a strategic decision was sound and this Court will not

second-guess defense counsel on habeas review.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").  Petitioner has failed to demonstrate that trial counsel was deficient in this regard.

Petitioner has also failed to establish that he was prejudiced by trial counsel's conduct. Under Michigan Rule of Evidence 404(b),[4] evidence of multiple offenses may be admitted against a defendant to prove a single scheme or plan or to establish identity, even if the charged offenses are severed into multiple trials.  *See People v. Williams*, 483 Mich. 226, 234 (2009).  Given that the nine robberies occurred in the same county within a few months of each other, were perpetrated by an African-American man wearing a painter's mask, and were similar in other respects, the trial court could have reasonably admitted some or all of the other robberies in each trial against Petitioner as evidence of a common plan or scheme and to establish his identity as the perpetrator.  Consequently, Petitioner cannot show that he was prejudiced by counsel's decision not to oppose the joinder of the charges.  *See Krist v. Foltz,* 804 F.2d 944, 947-48 (6th Cir. 1986) (while joinder of two robbery counts may have been improper, similarity of the robberies and their closeness in time would have made evidence of one crime admissible at separate trial of the other such that petitioner was not prejudiced by counsel's failure to seek severance); *Woodruff v. Lafler*, No. 05-CV-74623-DT, 2007 WL 522704, *5-6 (E.D. Mich. Feb. 14, 2007) (habeas

---

[4]Mich. R. Evid. 404(b) provides:  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in other to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether other such crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

petitioner failed to show prejudice from counsel's failure to seek severance where the acts would have been cross-admissible).

Moreover, there was ample evidence against Petitioner to support his convictions as to each count and he has not shown that he was prejudiced by having one trial on all of the charges against him. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). Habeas relief is not warranted on this claim.

### D. Withdrawal

Lastly, Petitioner asserts that trial counsel was ineffective for failing to withdraw during the trial. The Michigan Court of Appeals denied relief on this claim, stating:

> Defendant further contends that counsel was ineffective for failing to move to withdraw during trial because of a conflict of interest. Defendant contends that there was a breakdown of the attorney-client relationship, resulting in his filing of a grievance against trial counsel. This Court has rejected the notion that the filing of a grievance necessarily creates good cause for substituting counsel. Moreover, although defendant expressed dissatisfaction with his attorney at times, counsel testified that defendant seemed satisfied with his representation at other times. Counsel became aware of defendant's grievance against him only after the jurors began their deliberations. By the time counsel was able to discuss the matter with the trial court and opposing counsel, the jury had already reached a verdict. Although there was some discussion about defendant retaining a different attorney to represent him at sentencing, defendant apparently did not do so. Counsel testified that he did not withdraw as counsel because he felt that he could adequately represent defendant and he did not believe that a conflict of interest existed. Counsel further testified that he vigorously represented defendant at sentencing and did the best that he could. Because defendant failed to prove any deficiency in counsel's performance, he cannot

establish that he was prejudiced by counsel's failure to move to withdraw.

*Bellamy*, No. 268462 at *4 [citations omitted].

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  A defendant is entitled to defense counsel free from a conflict of interest. *See Holloway v. Arkansas*, 453 U.S. 475, 483-84 (1978).  While a defendant ordinarily has the right to choose his or her defense counsel, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).  "An indigent defendant...must demonstrate 'good cause' to warrant substitution of counsel."  *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).  Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [the] attorney."  *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985).  "[I]f the conflict is as to a matter that is irrelevant or the conflict is merely hypothetical, there is no constitutional violation."  *Moss v. United States*, 323 F.3d 445, 463-64 (6th Cir. 2003).  A petitioner must identify specific instances on the record which suggest an actual conflict. *See Thomas v. Foltz*, 818 F.2d 576, 481 (6th Cir. 1987).

Petitioner has failed to establish that defense counsel had a conflict of interest or was otherwise unable to function as competent counsel.  The mere filing of a grievance against defense counsel does not create a conflict of interest. *See Hunter v. Curtin*, No. 07-CV-15049, 2009 WL 2386082, *9 (E.D. Mich. July 31, 2009).  Furthermore, defense counsel did not receive notice of the grievance until the end of trial.  Consequently, the grievance could not have created a conflict of interest during trial because defense counsel was not aware of the grievance at that time.  Petitioner has failed to establish an actual conflict of interest at trial.   He has also failed to

identify instances which suggest an actual conflict of interest at sentencing.  At the *Ginther* hearing, defense counsel testified that he advocated for Petitioner to the best of his abilities at trial and sentencing.  The fact that Petitioner decided against seeking different counsel for sentencing indicates that he did not find counsel's representation to be inadequate.  Petitioner has failed to establish that trial counsel had a conflict of interest or was otherwise ineffective for failing to move to withdraw from representation.  Habeas relief is not warranted on this claim.

**V.    Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in this petition.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims.  *Id*. at 336-37.  Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to

his habeas claims.  Accordingly, the Court **DENIES** a certificate of appealability.

   **IT IS SO ORDERED**.


DATED: August 5, 2010                    **s/Anna Diggs Taylor**
                                         ANNA DIGGS TAYLOR
                                         UNITED STATES DISTRICT JUDGE

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 5, 2010.

Trent Bellamy, #588480
Gus Harrison Correctional Facility
2727 E. Beecher Street
Adrian, MI 49221

                                         s/Johnetta M. Curry-Williams
                                         Case Manager